**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| ************************************************** : | PROCEEDINGS FOR | |
| IN RE: : | REORGANIZATION | |
| H. Krevit and Company, Incorporated, et al.[1] : | UNDER | |
| : | CHAPTER 11 | |
| DEBTOR : | | |
| : | | |
| (Employer ID # -8460) : | CASE NOS. ___ through ___ | |
| ************************************************** : | | |
| ************************************************** : | | |
| IN RE: : | | |
| : | | |
| H. Krevit and Company, Incorporated, et al. : | | |
| : | | |
| Movant : | | |
| : | | |
| vs. : | | |
| : | | |
| AJM Industries LLC : | | |
| Enhanced Capital Connecticut Fund I, LLC : | | |
| Enhanced Capital Connecticut Fund II, LLC : | | |
| Enhanced Capital Connecticut Fund III, LLC : | | |
| Karter Capital Advisors, LLC : | | |
| Stonehenge Capital Fund Connecticut, II LLC : | | |
| Stonehenge Capital Fund Connecticut, III LLC : | | |
| Connecticut Dept. of Economic and Community : | | |
| Development : | | |
| United States Small Business Administration : | | |
| United States of America Internal Revenue Service : | | |
| Adex International, Inc. : | | |
| : | | |
| Respondents : | Docket No. ____ | |
| ************************************************** : | | |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507**
**(1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING USE OF CASH**
**COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION,**
**(5) MODIFYING AUTOMATIC STAY, AND (6) SCHEDULING A FINAL HEARING**

---

[1] In re H. Krevit and Company, Incorporated, Case No. 15-_____; In re GreenChlor, Inc., Case No. 15-_____; In re GCTR Realty, LLC, Case No. 15-_____; and In re HKC Trucking, LLC, Case No. 15-_____. On this same date, the Debtors filed an application for joint administration of these four cases.

Upon the motion (the "Motion") of H. Krevit and Company, Incorporated ("Krevit") and its affiliated debtors, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (collectively, with any successor cases, the "Cases"), pursuant to sections 105, 361, 362, 363(c), 364(c), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, *inter alia*, entry of an interim order (this "Interim Order") and a final order (the "Final Order"):

(i)     authorizing Krevit, GreenChlor, Inc. ("GreenChlor"), GCTR Realty, LLC ("GCTR") and HKC Trucking, LLC ("HKC," and together with Krevit, GreenChlor, and GCTR, the "Borrowers")) to obtain secured, superpriority postpetition financing (the "DIP Facility") consisting of a $1.5 million revolving credit facility, subject to the terms and conditions set forth herein and in that certain Debtor in Possession Credit and Security Agreement (as may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Agreement") by and among the Borrowers and ACM Business Solutions, LLC ("ACM," and together with its successors and assigns, the "DIP Lender"), substantially in the form of Exhibit A attached to the Motion;

(ii)     authorizing the Debtors to execute and deliver the DIP Agreement and other related loan documents (collectively with all documents comprising the DIP Facility, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)     authorizing the Debtors to grant the DIP Lender allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (as defined herein) for the DIP Facility and all obligations owing thereunder and under the DIP Documents

(collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations"), as more fully set forth in this Interim Order;

(iv)     authorizing the Debtors to grant the DIP Lender automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), which liens shall be subject to the priorities set forth in paragraph 7 below;

(v)     authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, the reasonable fees and disbursements of the DIP Lender's attorneys, advisors, accountants, and other consultants, all to the extent provided by and in accordance with the terms of the respective DIP Documents;

(vi)     authorizing the Debtors' use of the Cash Collateral on the terms and conditions set forth in this Interim Order;

(vii)     authorizing the Debtors to provide adequate protection of the liens and security of the IRS, Prepetition Senior Lender, Prepetition Junior Lenders and DECD (each, as defined herein);

(viii)   providing adequate protection to the IRS, Prepetition Senior Lender, Prepetition Junior Lenders and the DECD for any Diminution in Value (as defined herein) of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

(ix)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(x)      scheduling a final hearing (the "Final Hearing") on the Motion no later

than December 11, 2015 to consider the entry of the Final Order authorizing the borrowings

under the DIP Documents on a final basis and approve the form of notice procedures with

respect thereto.

The Court having considered the Motion, the exhibits attached thereto, the DIP

Documents, and the evidence submitted or adduced and the arguments of counsel made at the

interim hearing held on November 24, 2015 (the "Interim Hearing"); and notice of the Interim

Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and

9014; and the Interim Hearing to consider the interim relief requested in the Motion having been

held and concluded; and all objections, if any, to the interim relief requested in the Motion

having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that

granting the interim relief requested is necessary to avoid immediate and irreparable harm to the

Debtors and their respective bankruptcy estates (the "Estates") pending the Final Hearing, and

otherwise is fair and reasonable and in the best interests of the Debtors, their Estates, and their

creditors and equity holders, and is essential for the continued operation of the Debtors'

businesses; and after due deliberation and consideration, and for good and sufficient cause

appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING**

**BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS**

**OF FACT AND CONCLUSIONS OF LAW:**

A.      *Petition Date*:  On November 19, 2015 (the "Petition Date"), each of the Debtors

filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the

United States Bankruptcy Court for the District of Connecticut, New Haven Division,

commencing these Cases (the "Court").

B.     *Debtors in Possession*.   The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in these Cases.

C.     *Jurisdiction and Venue*.   This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).   Venue for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     *Statutory Committee*.   As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Statutory Committee").

E.     *Debtors' Stipulations*.   After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 31 herein, the Debtors (on behalf of and for themselves and their Estates) admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(xvi) below are referred to herein as the "Debtors' Stipulations"):

(i)     *2010 Revolving Loan:*   Pursuant to that certain Commercial Loan Agreement dated as of August 18, 2010 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "2010 Revolving Loan Agreement," and together with all other loan and security documents executed in connection therewith, the "2010 Revolving Loan Documents"), by and among New Alliance Bank now known as First Niagara Bank, N.A. ("FNB," and together with its assignee, AJM Industries, LLC, the "Prepetition Senior Lender") and Krevit, the Prepetition Senior Lender made loans to Krevit evidenced by that certain Commercial Revolving Promissory Note dated as of August 18, 2010, in the original principal

...

amount of $3,150,000 (the "2010 Revolving Loan Note").  As of the Petition Date, the aggregate

amount outstanding on the 2010 Revolving Loan Note is $3,003,410.89 (together with any

default interest, fees, expenses, and disbursements (including, without limitation, attorneys' fees,

related expenses and disbursements), indemnification obligations and other charges of whatever

nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "2010

Revolving Loan Obligations").

        (ii)    *2010 Term Loan:*  Pursuant to that certain Commercial Loan Agreement

dated as of August 18, 2010 (as amended, supplemented, restated or otherwise modified prior to

the Petition Date, the "2010 Multiple Loan Agreement," and together with all other loan and

security documents executed in connection therewith, the "2010 Multiple Loan Documents"), by

and among the Prepetition Senior Lender and Krevit, the Prepetition Senior Lender made loans

to Krevit evidenced by (a) that certain Commercial Term Promissory Note dated as of August

18, 2010, in the original principal amount of $850,000 (the "2010 Term Loan Note"), and that

certain Capital Expenditure Line of Credit Promissory Note dated as of August 18, 2010, in the

original principal amount of $450,000 (the "2010 Line of Credit Note").  As of the Petition Date,

the aggregate amount outstanding on the 2010 Term Loan Note is $286,408.25 (together with

any default interest, fees, expenses, and disbursements (including, without limitation, attorneys'

fees, related expenses and disbursements), indemnification obligations and other charges of

whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof,

the "2010 Term Loan Obligations").  As of the Petition Date, the aggregate amount outstanding

on the 2010 Line of Credit Note is $85,767.85 (together with any default interest, fees, expenses,

and disbursements (including, without limitation, attorneys' fees, related expenses and

disbursements), indemnification obligations and other charges of whatever nature, whether or not

contingent, whenever arising, due or owing in respect thereof, the "2010 Line of Credit Obligations").

      (iii)    *2010 Second Term Loan:*   Pursuant to that certain Building Agreement dated as of October 10, 2010 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "2010 Second Term Loan Agreement," and together with all other loan and security documents executed in connection therewith, the "2010 Second Term Loan Documents"), by and among the Prepetition Senior Lender, Krevit and GreenChlor Realty, LLC, the Prepetition Senior Lender made loans to Krevit and GreenChlor Realty, LLC evidenced by that certain Commercial Term Promissory Note dated as of October 10, 2010, in the original principal amount of $1,446,600 (the "2010 Second Term Loan Note").  The 2010 Second Term Loan Documents include that certain Mortgage Deed and Financing Statement (the "2010 Mortgage") dated October 10, 2010, granted by GreenChlor Realty, LLC now known as GCTR Realty LLC to further secure the debt evidenced by the 2010 Second Term Loan Note.  As of the Petition Date, the aggregate amount outstanding on the 2010 Second Term Loan Note is $753,231.35 (together with any default interest, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "2010 Second Term Loan Obligations").

      (iv)    *GreenChlor Loan:*   Pursuant to that certain Loan Agreement dated as of September 27, 2012 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "GreenChlor Loan Agreement," and together with all other loan and security documents executed in connection therewith, the "GreenChlor Loan Documents"), by and among the Prepetition Senior Lender and GreenChlor, the Prepetition Senior Lender made loans to GreenChlor evidenced by that certain Multiple Draw Term Note (Nonrevolving) dated as of

September 27, 2012, in the original principal amount of $11,617,400 (the "GreenChlor Loan Note"). As of the Petition Date, the aggregate amount outstanding on the GreenChlor Loan Note is $12,695,350.07 (together with any default interest, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "GreenChlor Loan Obligations").

(v)     *Prepetition Junior Loan:* Pursuant to that certain Credit Agreement dated as of November 23, 2012 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Junior Loan Agreement," and together with all other loan and security documents executed in connection therewith, the "Prepetition Junior Loan Documents"), by and among Enhanced Capital Connecticut Fund I, LLC (independently and in its capacity as Collateral Agent for the Prepetition Junior Lenders (as defined below)) ("ECPI"), Enhanced Capital Connecticut Fund II, LLC, Enhanced Capital Connecticut Fund III, LLC, Stonehenge Capital Fund Connecticut II, LLC, Stonehenge Capital Fund Connecticut III, LLC and Karter Capital Advisors, LLC (collectively, the "Prepetition Junior Lenders"), Krevit, and the guarantor parties thereto, the Prepetition Junior Lenders made loans to Krevit evidenced by those certain (i) Term Notes each dated as of November 23, 2012, in the original aggregate principal amount of $3,000,000 (the "Prepetition Junior Term Loan Notes"), and (ii) Interest Reserve Notes in the original aggregate amount of $500,000 (the "Prepetition Junior Loan Interest Notes," and, together with the Prepetition Junior Loan Term Notes, the "Prepetition Junior Notes"). As of the Petition Date, the aggregate amount outstanding on the Prepetition Junior Loan Notes is $_____ (together with any default interest, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and

other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "Prepetition Junior Loan Obligations").

(vi)     *2015 Revolving Loan:*   Pursuant to that certain Commercial Revolving Loan and Security Agreement dated as of March 18, 2015 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "2015 Revolving Loan Agreement," and together with all other loan and security documents executed in connection therewith, the "2015 Revolving Loan Documents," and together with the 2010 Revolving Loan Documents, the 2010 Multiple Loan Documents, the 2010 Second Term Loan Documents, and the GreenChlor Loan Documents, the "Prepetition Senior Loan Documents"), by and among the Prepetition Senior Lender and Krevit, the Prepetition Senior Lender made loans to Krevit evidenced by that certain Commercial Revolving Promissory Note (Variable Rate) dated as of March 18, 2015, in the original principal amount of $2,000,000, as amended and restated by that certain Amended and Restated Commercial Promissory Note (Variable Rate) (the "2015 Revolving Loan Note").  As of the Petition Date, the aggregate amount outstanding on the 2015 Revolving Loan Note is $3,014,000 (together with any default interest, fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "2015 Revolving Loan Obligations," and together with the 2010 Revolving Loan Obligations, the 2010 Term Loan Obligations, the 2010 Line of Credit Loan Obligations, the 2010 Second Term Loan Obligations, and the GreenChlor Loan Obligations, the "Prepetition Senior Loan Obligations").

(vii)     *2015 Revolving Loan Obligation Prepetition Mortgage Deed to Prepetition Senior Lender.*  Krevit granted the Prepetition Senior Lender that certain Open-End

Leasehold Mortgage Deed and Security Agreement (the "2015 Leasehold Mortgage") dated August 24, 2015, to secure its obligations arising under the 2015 Revolving Loan Obligations.

(viii)   *Prepetition Guaranties to Prepetition Senior Lender*:

(a)   *2010 Revolving Loan, 2010 Term Loan, and 2010 Line of Credit Note Prepetition Guaranty to Prepetition Senior Lender*:   Pursuant to that certain Guaranty Agreement dated August 28, 2010 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "August 2010 Loan Agreements Guaranty"), Thomas S. Ross unconditionally guaranteed to the Prepetition Senior Lender the obligations of Krevit under the 2010 Revolving Loan Note, the obligations of Krevit under the 2010 Term Loan, and the obligations of Krevit and GreenChlor under the 2010 Line of Credit Note.   Krevit granted a security interest in substantially all of its assets to the Prepetition Senior Lender in that certain Security Agreement (the "August 2010 Security Agreement") dated August 18, 2010, to secure its obligations arising under the August 2010 Loan Agreements Guaranty, including, but not limited to, the 2010 Revolving Loan, 2010 Term Loan, and 2010 Line of Credit Note.

(b)   *2010 Second Term Loan Prepetition Guaranties to Prepetition Senior Lender*:   Pursuant to that certain Guaranty Agreement dated October 4, 2010 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "2010 Second Term Loan Guaranty"), Thomas S. Ross and Douglas S. Ross unconditionally guaranteed to the Prepetition Senior Lender the obligations of Krevit and GreenChlor under the 2010 Second Term Loan.   GreenChlor granted a security interest in substantially all of its assets to the Prepetition Senior Lender in that certain Security Agreement (the "October 2010 Security Agreement") dated October 4, 2010, to secure its obligations arising under the 2010 Second Term Loan Guaranty, including, but not limited to, the 2010 Second Term Loan.

(c) *GreenChlor Loan Prepetition Guaranty to Prepetition Senior Lender*: Pursuant to that certain Guaranty Agreement dated September 27, 2012 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "GreenChlor Loan Guaranty"), Krevit, GCTR, HKC, and the related individuals, Thomas S. Ross and Douglas S. Ross, unconditionally guaranteed to the Prepetition Senior Lender the obligations of GreenChlor under the GreenChlor Loan Agreement.   GCTR granted the Prepetition Senior Lender that certain Open-End Mortgage Deed and Security Agreement (the "2012 Mortgage") dated September 27, 2012, to secure its obligations arising from the GreenChlor Loan Guaranty, including, but not limited to, the debt evidenced by the GreenChlor Loan Note.   Additionally, GCTR granted a security interest in substantially all of its assets to the Prepetition Senior Lender to secure its guaranty of GreenChlor's obligations under the GreenChlor Loan Agreement.

(d) *Douglas Ross and Sarah Ross Living Trust Guaranty to Krevit*: Pursuant to that certain Guaranty Agreement dated May 2013 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Living Trust Guaranty"), the Douglas Ross and Sarah Ross Living Trust (the "Living Trust") unconditionally guaranteed to Krevit the obligations of Douglas S. Ross pursuant to that certain Promissory Note dated May 9, 2013, by and among Douglas S. Ross and Krevit, in the original principal amount of $397,396.81 (the "Douglas S. Ross Note").   Additionally, the Living Trust granted Krevit that certain Stock Pledge Agreement ("Living Trust Stock Pledge Agreement"), dated May 2013, and Douglas S. Ross granted Krevit that certain Stock Pledge Agreement ("Ross Stock Pledge Agreement"), dated May 2013, to secure their obligations arising from the Living Trust Guaranty, including, but not limited to, the debt evidenced by the Douglas S. Ross Note.

(ix) *Guaranties to the Prepetition Junior Lenders*:

(a)  *Ross Guaranties to Junior Lender*.  Pursuant to that certain Continuing Guaranty dated November 23, 2012 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "<u>Prepetition Junior Loan Ross Guaranty</u>"), Thomas S. Ross, Douglas S. Ross, and Thomas S. Ross as Trustee of the Douglas Ross and Sara Ross Trust Dated August 25, 2009, unconditionally guaranteed the obligations of Krevit under the Prepetition Junior Loan Agreement.

(b)  *GreenChlor, GCTR and HKC Guaranties to Junior Lender*.  Pursuant to that certain Continuing Guaranty dated November 23, 2012 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "<u>Prepetition Junior Loan Related Parties Guaranty</u>"), GreenChlor, GCTR and HKC, unconditionally guaranteed the obligations of Krevit under the Prepetition Junior Loan Agreement.

(x)  *Prepetition Liens and Prepetition Collateral*.  As more fully set forth in the Prepetition Senior Loan Documents and Prepetition Junior Loan Documents, prior to the Petition Date, the Borrowers granted security interests in and liens on, among other things, (a) all assets of Krevit (collectively, the "<u>Prepetition Krevit Collateral</u>") to the Prepetition Senior Lender (the "<u>Prepetition Senior Krevit Liens</u>"); (b) the Prepetition Krevit Collateral to the Prepetition Junior Lenders (to the extent such liens are valid and properly perfected, the "<u>Prepetition Junior Krevit Liens</u>"); (c) all assets of GreenChlor (the "<u>GreenChlor Collateral</u>") to the Prepetition Senior Lender ("<u>Prepetition Senior GreenChlor Liens</u>"); (d) all assets of GCTR (collectively, the "<u>Prepetition GCTR Collateral</u>") to the Prepetition Senior Lender (the "<u>Prepetition Senior GCTR Liens</u>"); (e) all assets of HKC (collectively, the "<u>Prepetition HKC Collateral</u>," and together with the Prepetition Krevit Collateral, the Prepetition GreenChlor Collateral, and the Prepetition GCTR Collateral, the "<u>Prepetition Collateral</u>") to the Prepetition Senior Lender (the "<u>Prepetition Senior HKC Liens</u>," and together with the Prepetition Senior

Krevit Liens, the Prepetition Senior GreenChlor Liens and the Prepetition Senior GCTR Liens, the "Prepetition Senior Liens"); and (f) the Prepetition HKC Collateral to the Prepetition Junior Lenders (to the extent such liens are valid and properly perfected, the "Prepetition Junior HKC Liens," and together with the Prepetition Junior Krevit Liens, the "Prepetition Junior Liens").

(xi)   *Additional Encumbrances*.

(a)   DECD.  On or about November 16, 2012, the State of Connecticut, acting by the Department of Economic and Community Development ("DECD") entered into an Assistance Agreement (the "Assistance Agreement") with Krevit.  Pursuant to the Assistance Agreement, DECD loaned to Krevit $2,750,000.00 (the "DECD Loan").  To secure the DECD Loan, Krevit granted to DECD a security interest in and liens on all of its assets (the "DECD Liens").

(b)   SBA.  On or about February 14, 2012, GreenChlor executed a Note in favor of Connecticut Community Investment Corporation ("CCIC") in the original principal amount of $620,000 and secured the debt evidenced by said Note by granting CCIC an Open-End Mortgage (the "SBA Liens") recorded on February 15, 2012 in the New Haven Land Records in Volume 8793 at Page 104.  All right, title and interest of CCIC in said Note and Open-End Mortgage were assigned to the United States Small Business Administration (the "SBA") by an Assignment of Note, Mortgage and Other Loan Documents executed on February 14, 2012 and recorded on October 15, 2012 in the New Haven Land Records in Volume 8793 at Page 129.

(c)   IRS.  On or about April 17, 2014, the United States of America Internal Revenue Service (the "IRS") filed: (i) a lien against Krevit at the Office of the Connecticut Secretary of State in the amount of $215,565.39 for the period ending December 31, 2013 for obligations owed by Krevit on Form 941, which said Federal Tax Lien was also

recorded on April 22, 2014 in the New Haven Land Records in Volume 9135 at Page 296; and (ii) on or about May 22, 2014, the United States of America Internal Revenue Service filed a lien against Krevit at the Office of the Connecticut Secretary of State in the amount of $261,305 for the period ending September 30, 2013 for obligations owed by Krevit on Form 941, which said Federal Tax Lien was also recorded in the New Haven Land Records on June 2, 2014 in Volume 9151 at Page 3 (collectively, the "IRS Liens").  Based on a statement from the Internal Revenue Service dated October 7, 2015, the total amount of $465,199.12 remains due and owing to the IRS secured by the IRS Liens on that date.

       (d)    <u>Adex</u>.  On August 28, 2015, Adex International ("Adex") filed a Certificate of Mechanic's Lien (the "Adex Lien") against all that certain piece and parcel of real property known as 73 Welton Street, New Haven, Connecticut, with the City Clerk for the City of New Haven, Connecticut, in the amount of $2,182,660, plus interest and attorney's fees, if applicable, owned by GCTR, pursuant to an alleged contract for the provision of labor, services, equipment or materials with GreenChlor.

       (xii)    *Priority of the Prepetition Liens; Intercreditor Agreement*.  The Borrowers, the Prepetition Senior Lender and the Prepetition Junior Lenders stipulate, acknowledge and agree that they, along with the DECD, entered into that certain Intercreditor Agreement dated November 23, 2012 (as amended, supplemented or modified prior to the Petition Date, the "<u>Intercreditor Agreement</u>") to govern the respective rights, interests, obligations, priority, and the positions of the Prepetition Senior Lender, the Prepetition Junior Lenders and DECD with respect to the assets and properties of the Borrowers, which Intercreditor Agreement remains in full force and effect and binding on the parties thereto.  The Prepetition Junior Liens and the DECD Liens on any of the Prepetition Collateral are subordinate to the Prepetition Senior Liens in accordance with the Intercreditor Agreement, and the DECD

Liens on any of the Prepetition Collateral are subordinate to the Prepetition Junior Liens in accordance with the Intercreditor Agreement.

(xiii)   *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations*.  Subject to the provisions of paragraph 31 of this Order, the Debtors (for themselves and their Estates), the Prepetition Senior Lender, and the Prepetition Junior Lenders, acknowledge and agree that: (a) as of the Petition Date, the Prepetition Senior Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Senior Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to, to the extent valid, properly perfected, non-avoidable and senior in priority to the Prepetition Senior Liens as of the Petition Date, (i) the IRS Liens and (ii) certain liens otherwise permitted by the Prepetition Senior Loan Documents and prior in right, title and interest, including, but not limited to, the SBA Liens (the "Permitted Prior Liens");[2] (c) as of the Petition Date, the Prepetition Junior Liens were junior and subordinate to the Prepetition Senior Liens, IRS Liens and Permitted Prior Liens; (d) the Prepetition Senior Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (e) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Senior Liens or Prepetition Senior Loan Obligations exist, and no portion of the Prepetition Senior Liens or Prepetition Senior Loan Obligations is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (f) the Debtors and their Estates have no claims,

---

[2] Nothing herein shall constitute a finding or ruling by this Court that any such IRS Liens and Permitted Prior Liens (including, but not limited to, the SBA Liens) are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the Prepetition Senior Lender, the Prepetition Junior Lenders, the DIP Lender, and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such IRS Liens and Permitted Prior Liens.

objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Senior Lender or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors and employees.

(xiv)   *Transfer of Prepetition Senior Loan Obligations, Prepetition Senior Documents and Prepetition Senior Liens.*   Prior to the Petition Date, pursuant to that certain Loan Purchase Agreement dated November 16, 2015, by and among FNB and AJM, effective as of the 16th day of November, 2015, FNB sold, assigned, transferred and conveyed to AJM, and AJM purchased and accepted from FNB all of FNB's right, title and interest in, under and to the Prepetition Senior Loan Obligations, Prepetition Senior Loan Documents and Prepetition Senior Liens.

(xv)   *Cash Collateral.*   The Debtors represent that substantially all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute the Cash Collateral of the IRS, DIP Lender, Prepetition Senior Lender, Prepetition Junior Lender and DECD.

(xvi)   *Default by the Debtors.*   The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Prepetition Senior Loan Documents.

F.   <u>*Findings Regarding the Postpetition Financing.*</u>

(i)   *Need for Postpetition Financing and Use of Cash Collateral.*   The Debtors' need to obtain credit pursuant to the DIP Facility and to use Cash Collateral is immediate and critical in order to enable the Debtors to continue operations, to minimize the disruption of Debtors as "going concerns", to administer and preserve the value of their Estates. The ability of the Debtors to finance their operations, maintain business relationships with their

vendors, suppliers and customers, to pay their employees, and to otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their Estates, their creditors and equity holders, and the possibility for a successful reorganization.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(ii)     *No Credit Available on More Favorable Terms*.  Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code. The Debtors have also been unable to obtain credit:   (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their Estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their Estates that is subject to a lien pursuant to sections 364(c)(2) and (c) of the Bankruptcy Code.  Within the timeframe required by their need to avoid immediate and irreparable harm, financing on a postpetition basis is not otherwise available without granting the DIP Lender, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 7 hereof, (2) superpriority claims with the priorities set forth in paragraph 8, and (3) the other protections set forth in this Interim Order.

(iii)    *Priming of the Prepetition Senior Liens, Prepetition Junior Liens, DECD Liens and Adex Lien*.  The priming of the Prepetition Senior Liens, Prepetition Junior Liens, the DECD Liens and the Adex Liens on the Prepetition Collateral pursuant to section 364(d) of the Bankruptcy Code, as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their Estates and creditors.  The Prepetition Senior Lender and the Prepetition Junior Lenders consent to such priming liens and are entitled to receive adequate protection as set forth in this Interim Order, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in the value of their interests in the Prepetition Collateral (including Cash Collateral), resulting from, among other things, the subordination to the Carve Out (as defined herein) and to the DIP Liens (as defined herein), the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").  Because the value of the Debtors' interest in the Prepetition Collateral does not exceed the value of the Prepetition Senior Lender's, Prepetition Junior Lender's and all other senior lien holders' interests in such Prepetition Collateral, the DECD's interest and Adex's interest in the Prepetition Collateral lacks any value whatsoever.  Notwithstanding, this Interim Order provides the DECD with adequate protection to the extent of any Diminution in Value of its interest in the Prepetition Collateral.

(iv)    *Use of Proceeds of the DIP Facility.*  As a condition to the entry into the DIP Agreement, the extension of credit under the DIP Facility and the agreement for the use of Cash Collateral, the DIP Lender requires, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Documents, including any covenant (the "Budget Compliance Covenant") contained therein pertaining to compliance with the Budget (as defined in the DIP Documents and as the same may

be modified from time to time in accordance with the consents required under the DIP Documents), solely for (1) working capital and other general corporate purposes, (2) permitted payment of costs of administration of the Cases (subject to the limitations of the Carve Out (as defined herein)), (3) payment of fees and expenses due under the DIP Facility, and (4) payment of such prepetition expenses, in addition to the Prepetition Obligations permitted to be so paid in accordance with the consents required under the DIP Documents, and as approved by the Court.

(v)      *Application of Proceeds of Collateral*.  As a condition to the entry into the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral and other Prepetition Collateral, the Debtors have agreed that as of and commencing on the date of entry of the Interim Order, the Debtors shall apply the proceeds of DIP Collateral as set forth in the DIP Documents.

(vi)      *Adequate Protection*.  The IRS, Prepetition Senior Lender, the Prepetition Junior Lenders, and DECD are each entitled to receive adequate protection on account of their respective interests in the Prepetition Collateral, pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including the Cash Collateral).  Pursuant to sections 361, 363, 364 and 507(b), as adequate protection:  (i) the Prepetition Senior Lender will receive adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein, (ii) the Prepetition Junior Lenders will receive adequate protection liens as more fully set forth in paragraph 12 herein; and (iii) the IRS and DECD will receive adequate protection liens to the extent they had valid and properly perfected liens in the Prepetition Collateral, as more fully set forth in paragraph 12 herein.

(vii)      *Sections 506(c) and 552(b)*.  In light of (i) the DIP Facility and the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve Out; and (ii)

the Prepetition Senior Lender's agreement to subordinate its liens and superpriority claims to the Carve Out, DIP Liens and DIP Superpriority Claims, each of the DIP Lender and Prepetition Senior Lender are entitled to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) upon entry of a Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

G.    *Good Faith of the DIP Lender.*

(i)    *Willingness to Provide Financing.*   The DIP Lender has indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' Estates, that the DIP Lender is extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).*   The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Lender, Prepetition Senior Lender, and Prepetition Junior Lenders.   Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been so

allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses within the meaning of section 364(e) of the Bankruptcy Code. Accordingly, the DIP Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

H.      *Final Hearing*.  At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed Final Order, which shall be in form and substance acceptable to the DIP Lender and Prepetition Senior Lender approving such postpetition financing arrangements, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

I.      *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the U.S. Trustee; (ii) counsel to the DIP Lender (iii) counsel to the Prepetition Senior Lender; (iv) counsel to the Prepetition Junior Lenders; (v) the IRS, SBA and DECD; (vi) each creditor included in each of the Debtors' list of twenty (20) largest unsecured creditors; and (vii) all parties who have filed a notice of appearance and requested service of pleadings in the Cases. The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that**:

1.     <u>Interim Financing Approved</u>.   The Motion is granted as set forth herein, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.     <u>Objections Overruled</u>.   All objections to the Interim Financing to the extent not withdrawn or resolved are hereby overruled.

**<u>DIP Facilities Authorization</u>**

3.     <u>Authorization of the DIP Financing and DIP Documents</u>.   The DIP Documents are hereby approved for the Interim Financing.   The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Documents.   The Debtors are hereby authorized and directed to pay the principal, interest, fees, expenses and other amounts described in the DIP Documents as such become due and without need to obtain further Court approval, all to the extent provided in the DIP Documents, including, without limitation, the reasonable fees and disbursements of the DIP Lender's attorneys, advisers, accountants, and other consultants,[3] whether or not the transactions contemplated hereby are consummated.   Upon payment, such amounts shall be deemed fully earned, indefeasibly paid, and non-refundable.   All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries,

---

[3] The payment of the reasonable fees and expenses for any professionals of the DIP Lender shall not be subject to allowance by the Court. Professionals for the DIP Lender shall not be required to file fee applications or comply with the U.S. Trustee fee guidelines.

condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.  The DIP Lender shall be authorized to apply all such proceeds (subject to final payment or collection in the case of checks or other payment items) to the DIP Obligations in accordance with the DIP Documents.  Prior to the remittance to the DIP Lender of any proceeds of the DIP Collateral, Debtors shall be deemed to hold such proceeds for the benefit of the DIP Lender.  Transfers of funds from the Debtors accounts to the DIP Lender in accordance with this Interim Order and the DIP Document shall not be treated as disbursements for purposes of calculating quarterly fees owing pursuant to 28 U.S.C. § 1930(a)(6).  Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their Estates in accordance with their terms.

4.    <u>Authorization to Borrow</u>.  Until the earlier of (i) the Maturity Date; (ii) the date the Debtors repay the DIP Obligations in full and terminates the Credit Facility; (iii) the earlier date on which the DIP Obligations shall become due and payable in accordance with the terms of the DIP Agreement, including by acceleration by the DIP Lender upon the occurrence of an Event of Default hereunder, or the commitment to make advances is terminated in accordance with the terms of the DIP Agreement; or (iv) the closing of a sale of any of each Debtor's assets or Business pursuant to § 363(b) of the Bankruptcy Code (such earlier date, the "<u>Termination Date</u>"), and subject to the terms, conditions, limitations on availability set forth in the DIP Documents, DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' Estates, the Debtors are hereby authorized to request extensions of credit under the DIP Facility (in the form of loans) of up to an aggregate principal amount not to exceed $1.5 million at any one time outstanding (with up to $[100,000] available upon entry of this Interim Order) (the "<u>Interim Financing</u>").

5.      DIP Obligations.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases"). Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Lender under the DIP Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Documents.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Declaration Date (as defined herein), except as provided in paragraph 11 herein.

6.      DIP Liens and DIP Collateral.  Effective immediately upon the execution of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens (the "DIP Liens") on any and all presently owned and hereafter acquired personal property, real property and other assets of the Debtors, both tangible and intangible, whether owned or consigned by or to, or leased from or to the Debtors, (collectively, the "DIP Collateral"),[4] including, but not limited to, the following:[5] all (i) Prepetition Collateral; (ii) Accounts; (ii) Books; (iii) Chattel Paper; (iv)

---

[4] For the avoidance of doubt, the term DIP Collateral herein shall have the identical meaning as provided for the term "DIP Collateral" in the DIP Agreement.

[5] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Documents.  All terms not specifically defined in the DIP Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code.

Deposit Accounts, (v) Equipment and Fixtures, (vi) General Intangibles (including, without limitation, Payment Intangibles and Software), (vii) Inventory, (viii) Investment Related Property, (ix) Negotiable Collateral, (x) Supporting DIP Obligations, (xi) Commercial Tort Claims, (xii) money, cash and Cash Equivalents, and (xiii) proceeds of all leases and leasehold interests. The DIP Liens shall not extend to any avoidance actions or claims arising under chapter 5 of the Bankruptcy Code, except that the DIP Liens shall extend to any avoidance actions or claims in each case arising under section 549 of the Bankruptcy Code and the proceeds thereof.

7.    <u>DIP Lien Priority</u>.  The DIP Liens securing the DIP Obligations shall be junior only to the (a) Carve Out, (b) the IRS Liens, and the (c) Permitted Prior Liens (including the SBA Liens), and shall otherwise be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral including, but not limited to, the Prepetition Senior Liens, the Prepetition Junior Liens, the DECD Liens and the Adex Lien. Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

8.    <u>DIP Superpriority Claims</u>.  Upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority

administrative expense claim in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations.  The DIP Superpriority Claims shall be subordinate only to the Carve Out, and shall (a) otherwise have priority over any and all administrative expenses and unsecured claims against the Debtors or their Estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, except as set forth herein, and (b) at all times be senior to the rights of the Debtors and their Estates, and any successor trustee or other estate representative to the extent permitted by law.  The DIP Superpriority Claims shall not extend to any avoidance actions or claims arising under chapter 5 of the Bankruptcy Code, except that the DIP Superpriority Claims shall extend to any avoidance actions or claims in each case arising under section 549 of the Bankruptcy Code and the proceeds thereof.

9. <u>No Obligation to Extend Credit</u>.  The DIP Lender shall not have any obligation to make any loan or advance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Lender in its sole discretion.

10. <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Documents and in compliance with the Budget Compliance Covenant. Notwithstanding any first-day orders entered authorizing the Debtors to pay any prepetition or other expenses, all such payments shall be made in accordance with the Budget.  A copy of the Budget is attached to this Interim Order as **<u>Exhibit A</u>**.

**Authorization to Use Cash Collateral and Adequate Protection**

11.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and the DIP Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the Termination Declaration Date; <u>provided</u>, <u>however</u>, that during the five (5) days after the Termination Declaration Date, the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll and, with the prior written consents required under the DIP Documents, to pay expenses critical to the preservation of the Debtors and their Estates.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Budget.

12.     <u>Adequate Protection Liens</u>.

(a)     *IRS Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the IRS in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the IRS continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the same collateral comprising the Prepetition Collateral to the extent the IRS has valid and properly perfected security interests in and liens on the DIP Collateral (the "<u>IRS Adequate Protection Liens</u>").

(b)     *Prepetition Senior Lender Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Senior Lender in the Prepetition Collateral (to the extent any Prepetition Senior

Loan Obligations remain outstanding) against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Senior Lender continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "Prepetition Senior Lender Adequate Protection Liens").

(c)     *Prepetition Junior Lenders Adequate Protection Liens.*   Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Junior Lenders in the Prepetition Collateral (to the extent any Prepetition Junior Loan Obligations remain outstanding) against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Junior Lenders continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "Prepetition Junior Lenders Adequate Protection Liens").

(d)     *DECD Adequate Protection Liens*.   Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the DECD in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the DECD continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the same collateral comprising the Prepetition Collateral to the extent the DECD has valid and properly perfected security interests in and liens on the DIP Collateral (the "DECD Adequate Protection Liens", and together with the IRS Adequate Protection Liens, the Prepetition Senior Lender Adequate Protection Liens, the Prepetition Junior Lenders Adequate Protection Liens, the "Adequate Protection Liens").

(e)     *Priority of Adequate Protection Liens*

28

(i)      The IRS Adequate Protection Liens shall be junior only to the: (A) Carve Out; (B) DIP Liens solely to the extent of the DIP Lender's interest in the DIP Collateral other than Krevit's accounts receivable and inventory; (C) the IRS Liens to the extent they were valid and properly perfected; (D) the Prepetition Senior Liens solely to the extent of the Prepetition Senior Lender's interest in the DIP Collateral other than Krevit's accounts receivable and inventory; and the (D) Permitted Prior Liens to the extent they were valid and properly perfected.  The IRS Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(ii)     The Prepetition Senior Lender Adequate Protection Liens shall be junior only to the: (A) Carve Out; (B) DIP Liens; (C) IRS Liens to the extent they were valid and properly perfected; (D) IRS Adequate Protection Liens; (E) Prepetition Senior Liens; and (F) Permitted Prior Liens to the extent they were valid and properly perfected. The Prepetition Senior Lender Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(iii)    The Prepetition Junior Adequate Protection Liens shall be junior only to the: (A) Carve Out; (B) DIP Liens; (C) IRS Liens to the extent they were valid and properly perfected; (D) IRS Adequate Protection Liens; (E) Prepetition Senior Liens; (F) Prepetition Senior Lender Adequate Protection Liens; (G) Prepetition Junior Liens to the extent they were valid and properly perfected; and (H) Permitted Prior Liens to the extent they were valid and properly perfected.   The Prepetition Junior Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(iv)     The Prepetition DECD Adequate Protection Liens shall be junior only to the: (A) Carve Out; (B) DIP Liens; (C) IRS Liens to the extent they were valid and properly perfected; (D) IRS Adequate Protection Liens; (E) Prepetition Senior Liens; (F) Prepetition Senior Lender Adequate Protection Liens; (G) Prepetition Junior Liens to the extent they were valid and properly perfected; (H) Prepetition Junior Adequate Protection Liens; and (I) Permitted Prior Liens to the extent they were valid and properly perfected.  The Prepetition DECD Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(v)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

13.     <u>Adequate Protection Superpriority Claims</u>.

(a)     *Prepetition Senior Lender Adequate Protection Superpriority Claims*.  As further adequate protection of the interests of the Prepetition Senior Lender in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Senior Lender is hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Adequate Protection Superpriority Claims</u>").

(b)     *Priority of Adequate Protection Superpriority Claims*.   The Adequate
Protection Superpriority Claims shall be junior only to the Carve Out and DIP Superpriority
Claims.   Except as set forth herein, the Adequate Protection Superpriority Claims shall have
priority over all administrative expense claims and unsecured claims against the Debtors or their
Estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without
limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105,
326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent
permitted by law), 1113 and 1114 of the Bankruptcy Code.

14.     Section 507(b) Reservation.   Nothing herein shall impair or modify the
application of section 507(b) of the Bankruptcy Code in the event that the adequate protection
provided to any of the IRS, the Prepetition Senior Lender, Prepetition Junior Lenders and/or
DECD hereunder is insufficient to compensate for any Diminution in Value of their respective
interests in the Prepetition Collateral during the Cases or any Successor Cases.

**Provisions Common to DIP Financing  and Use of Cash Collateral Authorizations**

15.     Amendment of the DIP Documents. The DIP Documents may from time to time
be amended, modified or supplemented by the parties thereto without notice or a hearing if:  (i)
the amendment, modification, or supplement is (a) in accordance with the DIP Documents, (c)
beneficial to the Debtors, and (c) not prejudicial in any material respect to the rights of third
parties; (ii) a copy (which may be provided through electronic mail or facsimile) of the
amendment, modification or supplement is provided to counsel for any Statutory Committee and
the U.S. Trustee upon three (3) business days' notice; and (iii) the amendment, modification or
supplement is filed with the Court; provided, however, that consent of any Statutory Committee
or the U.S. Trustee, and approval of the Court is not necessary to effectuate any such
amendment, modification or supplement.  Except as otherwise provided in this paragraph 15, no

waiver, modification, or amendment of any of the provisions of any DIP Document shall be effective unless set forth in writing, signed on behalf of the Debtors and with the necessary consents required under and executed in accordance with the DIP Documents, and approved by the Court on notice.

16.    <u>Budget Maintenance</u>.   The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved by the DIP DIP Lender, each in its sole discretion.   The Budget may be amended or modified in writing from time to time only with the written consents required under the DIP Documents.   The Debtors shall update the Budget as provided in the DIP Documents (provided that any update shall be in form and substance acceptable to the DIP Lender in its sole discretion), with delivery to the DIP Lender in accordance with the DIP Documents, with copies to be provided to the Prepetition Junior Lender and any Statutory Committee within one business day.

17.    <u>Modification of Automatic Stay</u>.   The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims and Adequate Protection Superpriority Claims; (b) permit the Debtors to incur all liabilities and obligations under the DIP Documents, the DIP Facility and this Interim Order; and (c) permit the Debtors to perform such other acts as are necessary to effectuate the terms of this Interim Order.

18.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.   This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of

doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and Adequate Protection Liens, or to entitle the IRS, DIP Lender, Prepetition Senior Lender, Prepetition Junior Lender, and DECD to the priorities granted herein.   Notwithstanding the foregoing, each of the IRS, DIP Lender, Prepetition Senior Lender, Prepetition Junior Lender and DECD is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and/or Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the IRS, DIP Lender, Prepetition Senior Lender, Prepetition Junior Lender and DECD all such financing statements, mortgages, notices and other documents as any of the IRS, DIP Lender, Prepetition Senior Lender, Prepetition Junior Lenders, or DECD may reasonably request.  The IRS, DIP Lender, Prepetition Senior Lender, Prepetition Junior Lender and DECD, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

19.   Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP

Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' Estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied as set forth in the DIP Documents.

20.     <u>Maintenance of Insurance for DIP Collateral</u>.  Until the payment in full in cash of all DIP Obligations, and the termination of the DIP Lender's obligations to extend credit under the DIP Facility, the Debtors shall insure the DIP Collateral as required under the DIP Facility; and

21.     <u>Disposition of DIP Collateral; Rights of DIP Lender</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than as permitted in the DIP Documents without the prior written consents as required under the DIP Documents (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender, Prepetition Senior Lender, Prepetition Junior Lenders, or DECD, or an order of this Court).

22.     <u>DIP Termination</u>.  On the Termination Date, (a) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate, and (b) all authority to use Cash Collateral shall cease, <u>provided</u>, <u>however</u>, that for the five (5) days after the Termination Declaration Date, the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

23.     <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Agreement (subject to any extensions or waivers as permitted under the DIP Documents), shall constitute an event of default under this Interim Order, unless expressly waived in writing by the DIP Lender in accordance with the consents required in the DIP Documents (collectively, the "<u>Events of Default</u>").

24.   <u>Rights and Remedies Upon Event of Default</u>.   Immediately upon the occurrence

and during the continuation of an Event of Default, (a) the DIP Lender as provided in the DIP

Documents, may declare (i) all DIP Obligations owing under the DIP Documents to be

immediately due and payable, (ii) the termination, reduction or restriction of any further

commitment to extend credit to the Debtors to the extent any such commitment remains, (iii) the

termination of the DIP Agreement and any other DIP Document as to any future liability or

obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations,

and/or (iv) a termination, reduction or restriction on the ability of the Debtors to use Cash

Collateral, except as provided in paragraph 11   hereof; and (b) to the extent any Prepetition

Obligations remain outstanding, the Prepetition Senior Lender may declare a termination,

reduction or restriction of the ability of the Debtors to use any Cash Collateral, except as

provided in paragraph 11 (any such declaration by the DIP Lender or the Prepetition Senior

Lender, shall be referred to herein as a "<u>Termination Declaration</u>").   The Termination

Declaration shall be given by email (or other electronic means) to the Office of the U.S. Trustee,

counsel to the Debtors, counsel to the DIP Lender, counsel to the Prepetition Senior Lender,

counsel to the Prepetition Junior Lenders, the IRS, SBA, DECD, and counsel to any Statutory

Committee (the earliest date any such Termination Declaration is made shall be referred to

herein as the "<u>Termination Declaration  Date</u>").   The DIP Obligations shall be due and payable,

without notice or demand, and the use of Cash Collateral shall automatically cease on the

Termination Declaration Date, except as provided in paragraph 11.   Any automatic stay

otherwise applicable to the DIP Lender and Prepetition Senior Lender is hereby modified so that

beginning on the fifth day after the Termination Declaration Date (such five day period the

"<u>Remedies Notice Period</u>"), (x) the DIP Lender shall be entitled to exercise all rights and

remedies against the DIP Collateral in accordance with the DIP Documents and this Interim

Order and shall be permitted to satisfy the DIP Obligations and DIP Superpriority Claims, subject to the Carve Out, and (y) the Prepetition Senior Lender shall be entitled to exercise its rights and remedies to satisfy the Prepetition Senior Loan Obligations, and Adequate Protection Superpriority Claims, subject to the Carve Out.  Notwithstanding anything to the contrary, during the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing.  Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the Debtors shall no longer have the right to use or seek to use Cash Collateral, and the DIP Lender and the Prepetition Senior Lender shall be permitted to exercise all remedies set forth herein, in the  DIP Documents and Prepetition Senior Loan Documents, as applicable, and as otherwise available at law against the DIP Collateral and  Prepetition Collateral, as applicable, without any further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Lender with respect thereto pursuant to the DIP Agreement, DIP Documents, or this Interim Order.  Notwithstanding anything to the contrary in this Interim DIP Order, the right of the DIP Lender and the Prepetition Senior Lender to occupy and/or use any leased premises shall be limited to any rights:  (A) existing under applicable non-bankruptcy law; (B) consented to, in writing, by the applicable landlord(s); and/or (C) granted by the Court on motion and notice, and with an opportunity for the landlords to respond.

25.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  The DIP Lender and the Prepetition Senior Lender each have acted in

good faith in connection with negotiating the DIP Documents, extending credit under the DIP

Facility, allowing use of Cash Collateral and their reliance on this Interim Order is in good faith.

Based on the findings set forth in this Interim Order and the record made during the Interim

Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all

of the provisions of this Interim Order are hereafter reversed, modified, amended or vacated by a

subsequent order of this Court or any other court, the DIP Lender and Prepetition Senior Lender

are each entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such

reversal, modification, amendment or vacatur shall not affect the validity, perfection, priority,

allowability, enforceability or non-avoidability of any advances previously made or made

hereunder, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to

the DIP Lender  and Prepetition Senior Lender hereunder arising prior to the effective date of

any such reversal, modification, amendment or vacatur of this Interim Order shall be governed in

all respects by the original provisions of this Interim Order, including entitlement to all rights,

remedies, privileges and benefits granted herein.

26.     <u>Indemnification of DIP Lender</u>.  The Debtors shall indemnify and hold harmless

the DIP Lender and its respective shareholders, directors, agents, officers, subsidiaries and

affiliates, successors and assigns, attorneys and professional advisors, in their respective

capacities as such, from and against any and all damages, losses, settlement payments,

obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and

reasonable costs and expenses incurred, suffered, sustained or required to be paid by an

indemnified party of every nature and character arising out of or related to the DIP Documents,

or the DIP Facility or the transactions contemplated thereby and by this Interim Order, whether

such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP

Documents and as further described therein and herein, except to the extent resulting from such

indemnified party's gross negligence or willful misconduct as determined by a final non-appealable order of a court of competent jurisdiction.  The indemnity includes indemnification for the DIP Lender's exercise of discretionary rights granted under the DIP Facility.  In all such litigation, or the preparation therefor, the DIP Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

27.     <u>Reporting Requirements</u>.  Debtors shall observe and comply with all of the financial reporting and performance covenants and conditions set forth in the DIP Documents and the Prepetition Credit Documents.

28.     <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Lender under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Lender reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.   In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Lender all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Borrower.

29.     <u>Carve Out</u>.

(a)     *Carve Out*.  As used in this Interim Order, the "<u>Carve Out</u>" shall encompass the following expenses: (i) allowed fees and reimbursement for disbursements of professionals  retained by the Debtors ("<u>Debtors' Professional Fees</u>") in an aggregate amount for all such Professional Fees not to exceed $100,000; (ii) allowed fees and reimbursement for

disbursements of professionals retained by any statutory committee of unsecured creditors appointed in these Cases ("Committee's Professional Fees") in an aggregate amount for all such Professional Fees not to exceed $50,000; (iii) quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Bankruptcy Court; and (iv) amounts due and owing to the Debtors' employees for post-petition wages.  The Prepetition Senior Liens, Prepetition Junior Liens, DECD Liens and the Adex Lien, as well as the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and Adequate Protection Superpriority Claims granted pursuant to this Interim Order shall all be subject and subordinate in lien, payment and priority to the amounts payable by the Debtors on account of the Carve Out (collectively, the "Carve Out Amount"); provided, however, that the Carve Out Amount shall be reduced dollar for dollar by the aggregate amount of Debtors' Professional Fees and Committee's Professional Fees actually paid by the Debtors and their Estates during the pendency of the Cases (exclusive of retainers paid to such professionals prior to the Petition Date).

(b)    *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees*.    The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by the Debtors and/or any statutory committee incurred in connection with the Cases or any Successor Cases.  Nothing in this Interim Order or otherwise shall be construed (i) to obligate the DIP Lender, in any way to pay compensation to or to reimburse expenses of any professionals retained by the Debtors and/or any statutory committee appointed, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out Amount if actual Professional Fees exceed the Carve Out Amount; (iii) as consent to the allowance of any professional fees or expenses of any professionals retained by the Debtors and/or any statutory committee appointed; or (iv) to affect the right of the IRS, DIP Lender, Prepetition Senior

Lender, Prepetition Junior Lenders, or DECD to object to the allowance and payment of such fees and expenses.

30.    Limitations on the DIP Facility, DIP Collateral, Cash Collateral, and Carve Out. The DIP Facility, DIP Collateral, Cash Collateral, and Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Lender, Prepetition Senior Lender, Prepetition Junior Lender or their rights and remedies under the DIP Documents, Prepetition Senior Loan Documents, the Prepetition Junior Loan Documents, or this Interim Order, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, Prepetition Senior Loan Obligations, or the Prepetition Junior Loan Obligations, (iii) for monetary, injunctive or other affirmative relief against any DIP Lender, Prepetition Senior Lender, Prepetition Junior Lenders or their respective collateral, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and/or remedies under this Interim Order, the DIP Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Lender upon any of the DIP Collateral; (b) to make any distribution under a plan of reorganization in any of the Cases; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consents required under the DIP Documents; (d) to pay any fees or similar amounts to any person who has proposed or may

propose to purchase interests in any of the Debtors without the prior written consents required

under the DIP Documents, (e) subject to the limited use of Cash Collateral set forth in paragraph

11 above, objecting to, contesting, or interfering with in any way the DIP Lender's enforcement

or realization upon any of the DIP Collateral once an Event of Default has occurred; (f) using or

seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the

consents required under the DIP Documents; (g) using or seeking to use any insurance proceeds

constituting DIP Collateral without the consents required under the DIP Documents; (h)

incurring Debt (as defined in the DIP Agreement) outside the ordinary course of business

without the prior consents required under the DIP Documents; (i) objecting to or challenging in

any way the claims, liens, or interests (including interests in the Prepetition Collateral or DIP

Collateral) held by or on behalf of any DIP Lender, Prepetition Senior Lender, or Prepetition

Junior Lenders; (j) asserting, commencing or prosecuting any claims or causes of action

whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code,

against any DIP Lender, Prepetition Senior Lender or Prepetition Junior Lenders; (k) prosecuting

an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount,

perfection, priority, or enforceability of any of the Prepetition Senior Loan Obligations,

Prepetition Junior Loan Obligations, Prepetition Senior Liens, Prepetition Junior Liens, DIP

Obligations or DIP Liens or any other rights or interests of any of the Prepetition Senior Lender,

Prepetition Junior Lenders, or DIP Lender; or (l) preventing, hindering or otherwise delaying the

exercise by any DIP Lender, Prepetition Senior Lender, Prepetition Junior Lenders of any rights

and remedies granted under this Interim Order.  Notwithstanding the foregoing, an aggregate

amount not to exceed $7,500 of the DIP Facility, DIP Collateral, Cash Collateral and Carve Out

may be used by any Statutory Committee to investigate the Prepetition Liens within the

Challenge Period (as defined herein).

31.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.
Nothing in this Interim Order or the DIP Documents shall prejudice the rights of any Statutory
Committee, if granted standing by the Court, and, solely if no Statutory Committee is appointed,
any other party in interest granted standing by the Court (other than the Debtors and their
successors), to seek, solely in accordance with the provisions of this paragraph 31, to assert
claims against the Prepetition Senior Lender or Prepetition Junior Lenders on behalf of the
Debtors' or Debtors' creditors or interest holders or to otherwise challenge the Debtors'
Stipulations, including, but not limited to those in relation to:  (a) the validity, extent, priority, or
perfection of the mortgages, security interests, and liens of any Prepetition Senior Lender or
Prepetition Junior Lenders; (b) the validity, allowability, priority, secured status or amount of the
Prepetition Senior Obligations or Prepetition Junior Obligations; (c) any liability of the
Prepetition Senior Lender with respect to anything arising from or related to the Prepetition
Senior Loan Documents, Prepetition Senior Loan Obligations and/or Prepetition Senior Liens; or
(d) any liability of the Prepetition Junior Lenders with respect to anything arising from or related
to the Prepetition Junior Loan Documents, Prepetition Junior Loan Obligations and/or
Prepetition Junior Liens (separately or collectively, a "<u>Challenge</u>").  A party in interest, including
any Statutory Committee, if appointed, must, after obtaining Court-approved standing,
commence, as appropriate, a contested matter or adversary proceeding raising such a Challenge,
including, without limitation, any claim or cause of action against any Prepetition Senior Lender
or Prepetition Junior Lenders, within thirty (30) calendar days following the date of entry of the
Final Order or, if it occurs sooner, within forty-five (45) calendar days following the date of
entry of this Interim Order (the "<u>Challenge Period</u>").  The applicable Challenge Period may only
be extended with the written consent of the applicable Prepetition Senior Lender and Prepetition
Junior Lenders.  Only those parties in interest who commence a Challenge within the Challenge

Period may prosecute such a Challenge.  As to (i) any parties in interest, including the Statutory

Committee, who fail to file a Challenge within the Challenge Period, or, if any such Challenge is

filed and overruled or (ii) any and all matters that are not expressly the subject of a timely

Challenge:  (A) any and all such Challenges by any party (including, without limitation, any

Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative

appointed in these Cases, and any chapter 7 trustee and/or examiner or other estate representative

appointed in any Successor Case), shall be deemed to be forever waived and barred, (B) all of

the findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the

priority, extent, and validity as to the Prepetition Senior Lender's and each Prepetition Junior

Lender's claims, liens, and interests shall be of full force and effect and forever binding upon the

Debtors, the Debtors' Estates and all creditors, interest holders, and other parties in interest in

these Cases and any Successor Cases, and (C) any and all claims or causes of action against any

of the Prepetition Senior Lenders and/or Prepetition Junior Lenders relating in any way to the

Debtors shall be released by the Debtors' Estates, all creditors, interest holders and other parties

in interest in these Cases and any Successor Cases.

32.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim

Order does not create any rights for the benefit of any third party, creditor, equity holder or any

direct, indirect, or incidental beneficiary.

33.    <u>No Deemed Control</u>.   In making decisions to advance any extensions of credit

under the DIP Facility, or in taking any other actions related to this Interim Order or the DIP

Documents (including, without limitation, the exercise of its approval rights with respect to any

budget), DIP Lender shall have no liability to any third party and shall not be deemed to be in

control of the operations of Debtors or to be acting as   "controlling person," "responsible

person," or "owner or operator" with respect to the operation or management of Debtors (as such

term, or any similar terms, are used in the Internal Revenue Code, the United States
Comprehensive Environmental Response, Compensation and Liability Act as amended, or any
similar federal or state statute), and DIP Lender's relationship with Debtors shall not constitute
or be deemed to constitute a joint venture or partnership of any kind.

34.    <u>Continued Effectiveness of Intercreditor Agreement</u>.    The Intercreditor
Agreement shall continue in full force and effect and be binding on the Prepetition Junior
Lenders and the DECD, to the same extent as it was prior to the Petition Date and the entry of
this Interim Order, and shall inure to the benefit of the DIP Lender with the same force and effect
to the DIP Lender as it currently does to the Prepetition Senior Lender as if the DIP Lender were
originally named therein as the "<u>Senior Creditor</u>" named therein.   Except as expressly set forth in
the prior sentence, nothing in this Interim Order or the DIP Documents shall (a) modify or
amend any terms of the Intercreditor Agreement or (b) affect the validity or effectiveness of the
Intercreditor Agreement.    In the event of any direct conflict between the terms and conditions of
the Intercreditor Agreement and this Interim Order or the DIP Documents, the provisions of this
Interim Order and the DIP Documents shall govern and control, except with respect to provisions
of this Interim Order that are expressly subject to the terms of the Intercreditor Agreement (in
which case, the terms of the Intercreditor Agreement shall govern and control).

35.    <u>Section 506(c) Claims</u>.   Upon entry of the Final Order, no costs or expenses of
administration which have been or may be incurred in the Cases or any Successor Cases at any
time shall be charged against any DIP Lender, Prepetition Senior Lender, Prepetition Junior
Lenders, or any of their respective claims or the DIP Collateral or Prepetition Collateral pursuant
to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent
of the applicable DIP Lender, Prepetition Senior Lender or Prepetition Junior Lenders, and no

such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

36.    <u>No Marshaling/Applications of Proceeds</u>.  The DIP Lender, Prepetition Senior Lender, and Prepetition Junior Lenders shall not be subject to the equitable doctrine of "<u>marshaling</u>" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the DIP Documents.

37.    <u>Section 552(b)</u>.  The DIP Lender, Prepetition Senior Lender, and Prepetition Junior Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "<u>equities of the case</u>" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Senior Lender or Prepetition Junior Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

38.    <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' Estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

39.    <u>Discharge Waiver</u>.  The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the

effective date of such plan of reorganization or sale, of all DIP Obligations and the cancellation, backing, or cash collateralization of all letters of credit issued under the DIP Documents.

40.     <u>Rights Preserved</u>.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender, Prepetition Senior Lender, and Prepetition Junior Lenders are preserved.

41.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of any DIP Lender, Prepetition Senior Lender, or Prepetition Junior Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Documents, the Prepetition Senior Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the applicable DIP Lender, Prepetition Senior Lender, or Prepetition Junior Lender.

42.     <u>Binding Effect of Interim Order</u>.   Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the IRS, DIP Lender, Prepetition Senior Lender, Prepetition Junior Lenders, DECD, all other creditors of any of the Debtors, any Statutory Committee or any other court appointed committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

43.     <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations and Prepetition Senior Loan Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly, without the prior written consents required in the DIP Documents, of the DIP Lender and the Prepetition

Senior Lender, as applicable:  (a) any modification, stay, vacatur or amendment to this Interim

Order; (b) a priority claim for any administrative expense or unsecured claim against the Debtors

(now existing or hereafter arising of any kind or nature whatsoever, including, without limitation

any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the

Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP

Superpriority Claims, other than the Carve Out, (c) any other order allowing use of Cash

Collateral; or (d) any lien on any of the DIP Collateral with priority equal or superior to the DIP

Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or

extension of this Interim Order without the prior written consent, as provided in the DIP

Documents, of the DIP Lender and the Prepetition Senior Lender, as applicable, and no such

consent shall be implied by any other action, inaction or acquiescence of the applicable DIP

Lender and Prepetition Senior Lender.

44.     <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and

conditions of the DIP Documents or this Interim Order, the provisions of this Interim Order shall

govern and control.

45.     <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant

hereto shall survive entry of any order which may be entered: (a) confirming any plan of

reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of

the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to

which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and

provisions of this Interim Order, including the claims, liens, security interests and other

protections granted to the IRS, DIP Lender, Prepetition Senior Lender, Prepetition Junior

Lenders and DECD pursuant to this Interim Order and/or the DIP Documents, notwithstanding

the entry of any such order, shall continue in the Cases, in any Successor Cases, or following

dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been indefeasibly paid in full and all letters of credit under the DIP Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions concerning the indemnification of the DIP Lender shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the repayment of the DIP Obligations.

46.   <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for _____ __, 2015 at _:00 _.m. (Eastern Time) before the Honorable Julie A. Manning, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Connecticut, New Haven Division, 157 Church Street, 18th Floor, New Haven, CT 06510. On or before November __, 2015, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with a copy of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for any Statutory Committee. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on _____ __, 2015 at 4:00 p.m. (Eastern Time), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Rogin Nassau LLC CityPlace I - 22nd Floor, 185 Asylum Street, Hartford, CT 06103-3460 Attn: Barry Feigenbaum; (ii) counsel to any Statutory Committee; (iii) counsel to the DIP Lender and Prepetition Senior Lender, Zeisler & Zeisler, P.C., 10 Middle Street, 15th Floor, Bridgeport, CT

06604, Attn: Stephen M. Kindseth; (iv) counsel to Prepetition Junior Lenders, Robinson & Cole, LLP, 280 Trumbull St., Hartford, CT 06103, Attn: Michael R. Enright; and (v) the Office of the United States Trustee for the District of Connecticut, Giamo Federal Building, 150 Court Street, Room 302, New Haven, CT 06510, Attn: Holley L. Claiborn.  Unless an objecting party (or its counsel) appears the Final Hearing to assert the basis for such objection, such objection shall be deemed to have been waived and abandoned by such objecting party.

47.     <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

48.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.