UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

_____

In re:                                                          Chapter 11

H. KREVIT AND CO., INC., *et al*,            Cases No. 15-31904 through 15-31907 (JAM)

          Debtors.                                       (Joint Administration Pending)
_____

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO**
**CERTAIN OF THE DEBTORS' FIRST-DAY MOTIONS**

      William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), through counsel, objects to certain of the first-day motions of H. Krevit and Company, Incorporated ("H. Krevit & Co., Inc.") and related chapter 11 debtors (collectively, the "Debtors"). In support of this objection, the United States Trustee provides the following:

                                            **I.      BACKGROUND**

      1.      On November 19, 2015, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Case Nos. 15-31904, 15-31905, 15-31906, and 15-31907. *See* ECF No. 1.

      2.      Upon information and belief, the Debtors continue to operate their businesses and manage their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

      3.      The United States Trustee is in the process of soliciting creditor interest in the formation of one or more Official Committee(s) of Unsecured Creditors.

      4.      On November 19, 2015, the Debtors filed a series of "first-day" pleadings, including (i) a motion for preliminary and final orders to obtain credit and use cash collateral ("Financing Motion"); (ii) a motion for an order allowing the temporary continued use of pre-

1


petition bank accounts ("Bank Accounts"); (iii) a motion for an order allowing the payment of pre-petition payroll ("Payroll"), (iv) motion for joint administration ("Joint Administration"). See Case No. 15-31904, ECF Docs. ## 20423 at ECF Nos. 7-10.

## II.    OBJECTIONS

**Financing Motion**

Generally, when seeking an Order allowing a Debtor to obtain preliminary or interim financing or use of cash collateral, the Bankruptcy Court will consider only those needs of the debtor which are immediate and which will, if not authorized, will result in irreparable harm to the Debtor. Terms for interim financing or use of cash collateral should be simple, straightforward and only address the needs of the Debtor and the protection of the lender for the very finite period covered by the interim order(s) which is usually 15 days. Such a "bare-bones" interim order serves not only to protect the Debtor and lender but also serves to preserve the rights of other creditors and parties in interest both existing and those not yet brought into existence such as an Unsecured Creditors Committee. Unfortunately, the Financing Motion and Interim Order proposed by the Debtor (and the lender ACM Business Solutions, LLC ["ACM"]) much more resembles a rather draconian Final Financing Order which forecloses the rights of numerous parties in interest which have had no opportunity to defend their rights should the proposed interim Order be entered by the Court.

Among the most objectionable provisions included in the proposed Interim Financing Order are:

  a. On ECF Doc. # 9-4, page 4, the proposed interim financing order proposes that the Bankruptcy make a number of findings based upon the representations of the Debtor and ACM. As other parties, such as the not-yet-existent Unsecured Creditors Committee will have

2

no opportunity to contest any "evidence" presented by the Debtor and ACM, it is not appropriate for the Bankruptcy Court to make any findings so early in the Debtors' cases. Instead, the recitation should be that the Debtor and ACM represent certain facts to be true and the interim order is entered based upon these representations and not upon the findings of the Bankruptcy Court based upon these one-sided and yet-to-be controverted representations.

    b.    Although the Financing Motion speaks in terms of a $1.5 million DIP lending facility, it does not appear that more than $100 thousand will be available to the Debtors upon the entry of the interim financing order. *See* ECF Doc. # 9-4, page 23. If such is the case, ACM need not "lock-down" the Debtors and "lock-out" the rights of other creditors and parties in interest to a greater extent that is necessary to insure that it will be able to recover its initial lending plus interest during the period of the interim financing order. The proposed interim financing order goes far beyond insuring that the repayment of its initial lending is adequately secured.

    c.    The interim financing order seeks to circumvent the United States Code provisions compelling the Debtors to account for all disbursements in the determination of what amount each will be charged for Chapter 11 Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) in that it contains the following provision: [t]ransfers of funds from the Debtors accounts to the DIP Lender in accordance with this Interim Order and the DIP Document shall not be treated as disbursements for purposes of calculating quarterly fees owing pursuant to 28 U.S.C. § 1930(a)(6)." *Id*. There is nothing in the Debtors' Financing Motion which supports its ability to nullify a provision of the United States Code.

    d.    An Unsecured Creditors Committee, should one come into existence, is allowed a "carve-out" of $50 thousand but can only utilize $7.5 thousand of that figure to investigate the

3

pre-petition loans of the Debtor during a tight "challenge period" which runs no more than 45 days from the entry of the proposed interim financing order. As such a 45 day period is well outside the period of any interim financing order likely to be entered by the Bankruptcy Court and the Unsecured Creditors Committee is not yet in existence, it is inappropriate to include such limitations in the initial interim financing order. *Id*. at page 41.

    e.    The proposed interim financing order seeks to "permanently" bind all "successors" including Chapter 7 trustees well beyond that necessary in a brief interim financing order. *Id*. at page 24. The binding of yet non-appearing or non-existent parties should be kept to the absolute minimum in an interim financing order and only then to the extent necessary to protect the Debtor and lender's outlay during the interim period.

    f.    The interim financing order contains language which refers to the rights (or rather lack thereof) of parties to being able to bring Section 506 (c) claims against pre and post-petition lenders upon the entry of the final financing order. *Id*. at page 44. The interim financing order should not contain provisions about what might happen in the final financing order.

    g.    The interim financing order also seeks to "grant" ACM and the pre-petition lenders "all of the rights and benefits of section 552(b) of the Bankruptcy Code [and that the] 'equities of the case' exception shall not apply to any of the Prepetition Senior Lender or Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition collateral." *Id.* at page 45. It is improper for the Debtors and lenders to ask the Bankruptcy Court to prospectively waive any argument that the equities of the case exception should apply. This is especially true in the case of an interim financing order. *See In re Metaldyne Corp*., 2009 WL 2883045 at *5 - 6 (Bankr. S.D.N.Y. 2009) (court declined to make finding of fact that equitable rule was waived).

4

      h.      There are other objectionable sections of the Debtors and ACM's proposed interim financing order which might pass muster in the form of a final financing order after parties in interest have had the opportunity to review and respond to those provisions.  Until that opportunity presents itself, however, the United States Trustee reserves the right to make further objections.

      i.      The proposed interim financing order contains a "footnoted" provision which would excuse ACM from having the Bankruptcy Court review whether the fees charged by its attorneys (and passed along to the Debtors) were reasonable.  *Id*. at page 22.   With this provision alone, ACM could theoretically allow its attorneys to charge $10 million and pass that charge along to the Debtors as a super-priority administrative claim and with a superseding priority over all other secured creditors.

**Joint Administration Motion**

The United States Trustee has no objection to the joint administration of the Debtors four Chapter 11 cases under the lead case of H. Krevit and Company, Incorporated, Case No. 15-31904 (JAM).

**Bank Accounts Motion**

The United States Trustee does not object to the Debtors maintaining and keeping open their respective financial accounts at First Niagara Bank as First Niagara Bank is an approved depository for  Chapter 11 DIP and Trustee funds; however, as the purpose of closing pre-petition accounts also serves to prevent pre-petition creditors from inadvertently receiving payment post-petition on their pre-petition claims, the United States Trustee requests that the Bankruptcy Court order the Debtor to take steps to check, at least weekly until the pre-petition accounts are closed, that no payment has been made on a pre-petition claim which is not

5

specifically authorized by the Bankruptcy Court.  In addition, the United States Trustee also requests that the Bankruptcy Court require the Debtors to file a report at the end of the 30 days "grace" period which contains a list of all payments (except payroll-related) which were made in during the grace period.

**Pre-petition Payroll Motion**

The United States Trustee does not object to the payment of Debtors' employees for that period of time covered by the current payroll period which existed pre-petition; however, in order to insure that such payments are appropriate, the United States Trustee requests that the Bankruptcy Court require the Debtors to provide a list of every employee receiving such pre-petition wage or salary payment along with identifying whether that person is an owner of the Debtors, a supervisor/manager, or a rank and file employee of the Debtor as well as listing the amount of payment made and the classification of such payment, such as:  wages, salary, commission, vacation pay, reimbursement of expenses, etc.   Such will allow the United States Trustee to insure that only appropriate payments are made under this proposed emergency order.

### III.    CONCLUSION

Wherefore, the United States Trustee respectfully requests that the Court deny the Motions to the extent of the United States Trustee's objections, require the Debtors to act in

[This area left intentionally blank]

accordance with the United States Trustee's suggestions concerning its Bank Account Motion and Pre-petition Payroll Motion and grant such other relief as is appropriate.

Dated: November 23, 2015  
      New Haven, Connecticut

Respectfully submitted,

WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE FOR REGION 2

By: /s/ Steven E. Mackey  
Steven E. Mackey/ct09932  
Trial Attorney  
Office of the United States Trustee  
Giaimo Federal Building, Room 302  
150 Court Street  
New Haven, CT 06510  
(203) 773-2210